# EXHIBIT F

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSEPH J. BONANZA, As Administrator of the Estate of TERRA LYNN BONANZA, deceased, | THIRD AMENDED COMPLAINT |
| Plaintiff, | Civil Action No.: 9:23-cv-00691 (DNH-ATB) |
| -against- | |
| | JURY TRIAL DEMANDED |
| COUNTY OF ONEIDA, ONEIDA COUNTY SHERIFF'S DEPARTMENT, ONEIDA COUNTY CORRECTIONAL FACILITY, CBH MEDICAL, P.C., HELIO HEALTH, INC., SHERIFF ROBERT MACIOL, CHIEF DEPUTY SHERIFF LISA ZUREK, NAZIF CHOWDHURY, M.D., NABIN ADHIKARI, M.D., NANCY MENTER, R.N., and DOMENICA BUMGOLO DEF CORPORATIONS, JANE DOES, JOHN DOES, JANE ROES, AND JOHN ROES, (fictitious names, the true identities of which are unknown by plaintiff at present), | |
| Defendants. | |

Plaintiff, by his attorneys Greene Reid & Pomeroy, PLLC, as and for his Third Amended Complaint against the defendants, states and alleges as follows:

**JURISDICTION**

1.     This matter was removed from New York State Supreme Court of Oneida County pursuant to 28 U.S.C. §1441, on the basis of federal question jurisdiction pursuant to 28 U.S.C. §1331.  Jurisdiction is also vested in the District Court as plaintiff has alleged causes of action pursuant to 42 U.S.C. §1983.

2.     This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.

3.     Venue is proper under 28 U.S.C. §1391(e)(2) as the events giving rise to plaintiff's claims occurred in this judicial district.

## THE PARTIES

4.     At all times relevant hereto, the plaintiff was and is a resident of the City of Utica, Oneida County, New York.

5.     At all times relevant hereto, the plaintiff's decedent, Terra Lynn Bonanza, was a resident of the City of Utica, Oneida County, New York.

6.     Upon information and belief, at all times relevant hereto, the defendant, County of Oneida, was a municipal corporation created, organized and/or existing by virtue of the laws of the State of New York, with a principal place of business in the County of Oneida, New York.

7.     Upon information and belief, at all times relevant hereto, the defendant, Oneida County Sheriff's Department, was a municipal corporation and/or public agency created, organized and/or existing by virtue of the laws of the State of New York, with a principal place of business in the County of Oneida, New York.

8.     Upon information and belief, at all times relevant hereto, the defendant, Oneida County Correctional Facility, was a municipal corporation, public agency and/or division of the Oneida County Sheriff's Department created, organized and/or existing by virtue of the laws of the State of New York, with a principal place of business in the County of Oneida, New York.

9.     Upon information and belief, at all times relevant hereto, the defendant, CBH Medical, P.C., was a domestic professional service corporation organized and/or existing by virtue of the laws of the State of New York, and/or was authorized to transact business, and/or was

GREENE REID & POMEROY, PLLC
ATTORNEYS AT LAW
173 INTREPID LANE
SYRACUSE, NEW YORK 13205-2538
TEL. NO. 315/492-9665

transacting business, in New York State on and/or before the date of the events complained of herein, with a corporate address in Blue Bell, Pennsylvania.

10.    Upon information and belief, at all times relevant hereto, the defendant, Helio Health, Inc., was a domestic not-for-profit corporation organized and/or existing by virtue of the laws of the State of New York, and/or was authorized to transact business, and/or was transacting business, in New York State on and/or before the date of the events complained of herein, with a corporate address in Syracuse, Onondaga County, New York.

8.    Upon information and belief, at all times relevant hereto, the defendants, DEF Corporations (fictitious names, the true identifies of which are unknown by plaintiff at present), were and/or are business organizations organized and/or existing by virtue of the laws of the State of New York, and/or were authorized to transact business, and/or were transacting business, in New York State on and/or before the date of the events complained of herein.

9.    Upon information and belief, at all times relevant hereto, the defendants, Jane Does, John Does, Jane Roes, and/or John Roes (fictitious names, the true identities of which are unknown by plaintiff at present), were officers, officials, agents, servants, employees, contractors, and/or sub-contractors of defendants Oneida County, Oneida County Sheriff's Department, Oneida County Correctional Facility, CBH Medical, P.C., Helio Health, Inc., and/or DEF Corporations, and were acting individually and/or within their official capacity, course, scope, employment, and/or contract with Oneida County, Oneida County Sheriff's Department, Oneida County Correctional Facility, CBH Medical, P.C., Helio Health, Inc., and/or DEF Corporations.

11.    Upon information and belief, at all times relevant hereto, the defendant, Robert Maciol, was the Sheriff of Oneida County acting individually and/or within the course, scope, and/or

employment with Oneida County, Oneida County Sheriff's Department and/or Oneida County Correctional Facility, with a principal place of business in Oneida County, New York.

12.    Upon information and belief, at all times relevant hereto, the defendant, Lisa Zurek, was the Chief Deputy Sheriff of Oneida County acting individually and/or within the course, scope, and/or employment with Oneida County, Oneida County Sheriff's Department and/or Oneida County Correctional Facility, with a principal place of business in Oneida County, New York.

13.    Upon information and belief, at all times relevant hereto, the defendant, Nazif Chowdhury, M.D., was the owner and corporate medical director of CBH Medical, P.C. and was acting individually and/or within the course, scope and/or employment with CBH Medical, P.C., with a principal place of business in Blue Bell, Pennsylvania.

14.    Upon information and belief, at all times relevant hereto, the defendant, Nabin Adhikari, M.D., was the medical director and/or attending physician at the Oneida County Correctional Facility and was acting individually and/or within the course, scope, and/or employment with CBH Medical, P.C., with a principal place of business in Oneida County, New York.

15.    Upon information and belief, at all times relevant hereto, the defendant, Nancy Menter, R.N., was the health services administrator at the Oneida County Correctional Facility and was acting individually and/or within the course, scope, and/or employment with CBH Medical, P.C., with a principal place of business in Oneida County, New York.

16.    Upon information and belief, at all times relevant hereto, the defendant, Domenica Bumgolo, was the program director for forensic mental health at the Oneida County Correctional

Facility and was acting individually and/or within the course, scope, and/or employment with Helio Health, Inc., with a principal place of business in Oneida County, New York.

17.     The plaintiff was issued Limited Letters of Administration in the Estate of Terra Lynn Bonanza, deceased, by the Surrogate's Court of Oneida County on May 16, 2022, and is duly qualified to prosecute this action on behalf of the estate of Terra Lynn Bonanza and decedent's distributees.  A copy of the Limited Letters of Administration is attached as Exhibit "A".

18.     The plaintiff brings this action under EPTL §5-4.1, and such other Federal and/or New York statutes as may be applicable, for the personal injuries, pain and suffering and wrongful death of the decedent, Terra Lynn Bonanza, and the pecuniary injury to decedent's estate and distributees.

## FACTUAL ALLEGATIONS

19.     This action falls within one or more of the exceptions set forth in CPLR 1602.

20.     The plaintiff timely and properly served a Notice of Claim with regard to the incident and damages set forth herein upon the defendants, County of Oneida and Oneida County Correctional Facility.

21.     That on November 17, 2022, the plaintiff, Joseph J. Bonanza, appeared at a 50-H hearing pursuant to notice and gave testimony pursuant to the Claim herein.

22.     That more than thirty days have elapsed since the service of the Notice of Claim and defendants have either denied or failed to adjust said claim.

23.     Upon information and belief, at all times relevant hereto, the defendant, County of Oneida, owned, operated and/or managed the Oneida County Sheriff's Department located at 6065 Judd Road, Oriskany, Oneida County, New York.

24.     Upon information and belief, at all times relevant hereto, the defendant, County of
Oneida, owned, operated and/or managed the Oneida County Correctional Facility located at 6075
Judd Road, Oriskany, Oneida County, New York.

25.     Upon information and belief, at all times relevant hereto, the defendant, County of
Oneida, assumed and maintained responsibility, supervision, control, and/or authority over the
Oneida County Sheriff's Department and/or Oneida County Correctional Facility, their officers,
agents, servants, employees, contractors, and/or sub-contractors, including but not limited to, Sheriff
Robert Maciol and Chief Deputy Sheriff Lisa Zurek, CBH Medical, P.C., its agents, servants and/or
employees, including but not limited to Nazif Chowdhury, M.D.,  Nabin Adhikari, M.D. and Nancy
Menter, R.N., and Helio Health, Inc., its agents, servants and/or employees, including but not limited
to, Domenica Bumgolo.

~~DEF Corporations, Jane Does, John Does, Jane Roes, and/or John Roes~~.

26.     Upon information and belief, at all times relevant hereto, the defendant, Oneida
County Sheriff's Department, owned, operated and/or managed the Oneida County Correctional
Facility located at 6075 Judd Road, Oriskany, Oneida County, New York.

27.     Upon information and belief, at all times relevant hereto, the defendant, Oneida
County Sheriff's Department, its officials, officers, agents, servants, and/or employees, including but
not limited to, Sheriff Robert Maciol and Chief Deputy Sheriff Lisa Zurek, assumed and maintained
responsibility, supervision, control, and/or authority over the Oneida County Correctional Facility,
its officers, agents, servants, employees, contractors, and/or sub-contractors, including but not
limited to, CBH Medical, P.C., its agents, servants and/or  employees, including but not limited to,
Nazif Chowdhury, M.D., Nabin Adhikari, M.D. and Nancy Menter, R.N., and Helio Health, Inc., its

agents, servants and/or employees, including but not limited to, Domenica Bumgolo. ~~DEF Corporations, Jane Does, John Does, Jane Roes, and/or John Roes~~.

28.     Upon information and belief, at all times relevant hereto, officials, officers, agents, servants, and/or employees ~~contractors, and/or sub-contractors~~ of the defendant, Oneida County Correctional Facility, including but not limited to, Sheriff Robert Maciol and/or Chief Deputy Sheriff Lisa Zurek, ~~DEF Corporations, Jane Does, John Does, Jane Roes, and/or John Roes,~~ assumed and maintained responsibility, supervision, control, and/or authority over the operation and/or management of the Oneida County Correctional Facility, its officers, agents, servants, employees, contractors, and/or sub-contractors, including but not limited to, CBH Medical, P.C., its agents, servants and/or  employees, including but not limited to, Nazif Chowdhury, M.D., Nabin Adhikari, M.D. and Nancy Menter, R.N., and Helio Health, Inc., its agents, servants and/or employees, including but not limited to, Domenica Bumgolo.

29.     Upon information and belief, at all times relevant hereto, the defendants, County of Oneida, Oneida County Sheriff's Department and/or Oneida County Correctional Facility, their officials, officers, agents, servants, and/or employees, ~~contractors, and/or sub-contractors,~~ including but not limited to, Sheriff Robert Maciol and Chief Deputy Sheriff Lisa Zurek, ~~DEF Corporations, Jane Does, John Does, Jane Roes, and/or John Roes,~~ assumed and/or maintained responsibility, supervision, management, control, and/or authority over the inmates of the Oneida County Correctional Facility.

30.     Upon information and belief, at all times relevant hereto, the defendants, Sheriff Robert Maciol and/or Chief Deputy Sheriff Lisa Zurek, in their individual and/or employment capacities for the County of Oneida, Oneida County Sheriff's Department and/or Oneida County

Correctional Facility, and/or other officials, officers, agents, servants, and/or employees of County of Oneida, Oneida County Sheriff's Department and/or Oneida County Correctional Facility, were responsible for overseeing, supervising and/or training the staff of the Oneida County Correctional Facility and/or for implementing, employing, enforcing, and/or ensuring compliance with, policies, procedures, protocols, practices, and/or customs for the supervision, management, care, safety, and/or treatment of the inmates at Oneida County Correctional Facility.

31.     Upon information and belief, on and/or before March 5, 2021, and at all times relevant hereto, the defendants, County of Oneida, Oneida County Sheriff's Department and/or Oneida County Correctional Facility, hired, contracted with, engaged, and/or employed CBH Medical, P.C. and Helio Health, Inc. ~~DEF Corporations, Jane Does, John Does, Jane Roes, and/or John Roes~~ to provide medical and mental health care services and treatment to the inmates of the Oneida County Correctional Facility.

~~32.     Upon information and belief, at all times relevant hereto, the defendants, County of Oneida, Oneida County Sheriff's Department and/or Oneida County Correctional Facility, assumed and/or maintained responsibility, supervision, management, control, and/or authority over CBH Medical, P.C., Helio Health, Inc., DEF Corporations, Jane Does, John Does, Jane Roes, and/or John Roes.~~

32.     Upon information and belief, on and/or before March 5, 2021, and at all times relevant hereto, the defendant, CBH Medical, P.C., ~~DEF Corporations, Jane Does, John Does, Jane Roes, and/or John Roes,~~ contracted with defendants County of Oneida, Oneida County Sheriff's Department and/or Oneida County Correctional Facility to provide medical health care services and treatment to the inmates of the Oneida County Correctional Facility.

33.    Upon information and belief, on and/or before March 5, 2021, and at all times relevant hereto, the defendant, Helio Health, Inc., ~~DEF Corporations, Jane Does, John Does, Jane Roes, and/or John Roes,~~ contracted with defendants County of Oneida, Oneida County Sheriff's Department and/or Oneida County Correctional Facility to provide mental health care services and treatment to the inmates of the Oneida County Correctional Facility.

34.    Upon information and belief, at all times relevant hereto, the defendant, CBH Medical, P.C., ~~and/or DEF Corporations,~~ provided medical personnel and staff, including but not limited to, Nazif Chowdhury, M.D., Nabin Adhikari, M.D. and Nancy Menter, R.N., to provide and/or oversee the medical health care services and treatment to the inmates of the Oneida County Correctional Facility.

35.    Upon information and belief, at all times relevant hereto, the defendants, Nazif Chowdhury, M.D., in his individual capacity and/or as owner and corporate medical director of CBH Medical, P.C., and/or Nabin Adhikari, M.D., in his individual capacity and/or as medical director and/or attending physician at Oneida County Correctional Facility, and/or Nancy Menter, R.N., in her individual capacity and/or as the health services administrator at Oneida County Correctional Facility, and/or other officers, agents, servants, and/or employees of CBH Medical, P.C., were responsible for overseeing, supervising and/or training CBH Medical staff and/or for implementing, employing, enforcing, following, and/or ensuring compliance with policies, procedures, protocols, practices, and/or customs for the medical care and treatment of the inmates at Oneida County Correctional Facility.

36.    Upon information and belief, at all times relevant hereto, the defendant, Helio Health, Inc., ~~and/or DEF Corporations,~~ provided staff and personnel to provide and/or oversee the mental

health care services and treatment to the inmates of the Oneida County Correctional Facility, including but not limited to, Domenica Bumgolo.

37.    Upon information and belief, at all times relevant hereto, the defendant, Domenica Bumgolo, in her individual capacity and/or as forensic mental health program director of Helio Health, Inc. at the Oneida County Correctional Facility, and/or other officers, agents, servants, and/or employees of Helio Health, Inc., was/were responsible for overseeing, supervising and/or training Helio Health staff and/or for implementing, employing, enforcing, following, and/or ensuring compliance with policies, procedures, protocols, practices, and/or customs for the mental health care and treatment of the inmates at Oneida County Correctional Facility.

29.    Upon information and belief, at all times relevant hereto, agents, servants, employees, and/or staff, and/or sub-contractors of defendant CBH Medical, P.C., and/or DEF Corporations, and/or defendants Jane Does, John Does, Jane Roes, and/or John Roes, individually and/or as agents, servants, employees, staff, and/or sub-contractors of defendants CBH Medical, P.C. and/or DEF Corporations, provided and/or oversaw the medical health care services and treatment to the inmates of the Oneida County Correctional Facility.

30.    Upon information and belief, at all times relevant hereto, agents, servants, employees, and/or staff, and/or sub-contractors of defendant Helio Health, Inc., and/or DEF Corporations, and/or defendants Jane Does, John Does, Jane Roes, and/or John Roes, individually and/or as agents, servants, employees, staff, and/or sub-contractors of defendants Helio Health, Inc. and/or DEF Corporations, provided and/or oversaw the mental health care services and treatment to the inmates of the Oneida County Correctional Facility.

38.    Upon information and belief, at all times relevant hereto, the defendants failed to implement, employ, enforce, follow, and/or ensure compliance with policies, procedures, protocols, practices, customs, standards, and/or regulations, and/or violated policies, procedures, protocols, practices, customs, standards, and/or regulations, pertaining to the supervision, management, safety, care, and/or treatment of the decedent.

39.    Upon information and belief, at all times relevant hereto, the defendants are liable to the plaintiff for the acts complained of herein in their individual and/or employment capacities and/or under the theories of vicarious liability and/or *respondeat superior*.

40.    That on or about March 5, 2021, continuing through March 14, 2021, the plaintiff's decedent, Terra Lynn Bonanza, was incarcerated at the Oneida County Correctional Facility, with a known history of drug and alcohol abuse and mental health issues.

41.    Upon information and belief, upon the decedent's admission to the Oneida County Correctional Facility on March 5, 2021, a suicide risk assessment resulted in a non-emergent referral to mental health, an emergent referral to medical for suspicions of her being under the influence of drugs and/or alcohol and placement on a medical constant watch.

42.    Upon information and belief, at all times relevant hereto, the defendants failed to follow through with and/or implement the mental health and/or medical referrals and/or provide medical and/or mental health care and services, and/or failed to keep the decedent under a medical constant watch.

43.    Further, upon information and belief, at all times relevant hereto, the defendants failed to implement, follow and/or ensure compliance with policies, procedures, protocols, standards, and/or regulations, including but not limited to, COVID-19 protocols, by failing to perform

temperature checks on the decedent and/or employ such other measures to determine if the decedent presented with COVID-19 upon intake and/or was exposed to and/or contracted COVID-19 during her incarceration.

44.    Upon information and belief, from decedent's incarceration on March 5, 2021, and continuing through March 14, 2021, while under the care, custody and supervision of the defendants, the decedent's mental and physical condition deteriorated.

45.    Upon information and belief, on March 14, 2021, the decedent required emergency transport to the hospital emergency department, where she was admitted with diagnoses of COVID-19 virus infection, sepsis, septic pulmonary emboli, MRSA bacteremia, thrombocytopenia, acute kidney injury, dehydration with hyponatremia, elevated liver function tests, urinary tract infection, and intractable nausea and vomiting.

46.    The decedent was hospitalized until her death on April 22, 2021, due to septic shock from MRSA bacteremia, endocarditis, bilateral septic pulmonary emboli, COVID-19 pneumonia, respiratory failure, shock liver, hepatic encephalopathy, thrombocytopenia, respiratory and metabolic alkalosis, acute renal failure, and multi-organ failure.

47.    Upon information and belief, at all times relevant hereto, the defendants failed to properly house, monitor, supervise, oversee, assist, care for, and/or treat the decedent, resulting in her death on April 22, 2021.

## FIRST CAUSE OF ACTION
## AGAINST DEFENDANTS COUNTY OF ONEIDA, ONEIDA
## COUNTY CORRECTIONAL FACILITY, ONEIDA COUNTY
## SHERIFF'S DEPARTMENT, SHERIFF ROBERT MACIOL
## AND CHIEF DEPUTY SHERIFF LISA ZUREK

48.      Plaintiff repeats and realleges paragraphs "1" through "47" of his Third Amended

Complaint as if set forth fully herein and further states and alleges:

49.      Defendants, individually and/or through their agents, servants and/or employees,

contractors, and/or sub-contractors, were careless, reckless, negligent, grossly negligent, and/or acted

willfully, wantonly, egregiously, and/or with reckless disregard and indifference, in their

responsibilities, care, custody, control, management, and/or supervision of the decedent, in part by,

failing to provide for the proper care, safety and/or well-being of the decedent; violating and/or

disregarding regulations, policies, procedures, protocols and/or guidelines for the care, safety, health,

and/or well-being of the inmates; failing to follow and/or abide by regulations, policies, procedures,

protocols, and/or guidelines for new inmate intakes and assessments; failing to perform a proper,

thorough and/or timely intake and assessment on the decedent; failing to perform a thorough and/or

timely body search of the decedent for contraband; failing to implement, follow, and/or ensure

compliance with COVID-19 management protocols; failing to implement, follow and/or abide by

policies, procedures and/or protocols for inmate drug and/or alcohol withdraw; failing to properly

assess, observe and/or monitor the decedent; failing to communicate and/or timely communicate the

decedent's medical and/or mental health history and/or substance abuse history to the proper

personnel; failing to make proper and/or timely referrals to medical and/or mental health services;

failing to communicate and/or notify and/or timely communicate and/or notify decedent's behaviors,

mentation, refusals, complaints, signs, symptoms, and/or physical and/or mental changes and/or

decline to the proper personnel; failing to notify and/or timely notify medical personnel of

decedent's medication requirements; failing to adequately, properly, thoroughly, and/or timely

document decedent's behavioral issues, mentation, refusals, complaints, signs, symptoms, and/or

physical and/or mental changes and/or decline; failing to maintain proper, adequate, thorough,

and/or timely logs for the decedent; relaying improper, inaccurate and/or incomplete information to

medical and/or mental health service providers; disregarding decedent's behaviors, mentation,

refusals, complaints, signs, symptoms, and/or physical and/or mental changes and/or decline; failing

to recognize, and/or disregarding, signs and/or symptoms of drug and/or alcohol withdraw and/or

intoxication; failing to act upon the decedent's signs and/or symptoms of drug and/or alcohol

withdraw; failing to provide the decedent with adequate hydration; disregarding the decedent's

inability and/or refusal to eat; disregarding decedent's weakened condition, inability to ambulate

and/or inability to toilet herself; allowing the decedent to become and remain soaked in her urine and

covered in her feces; failing to provide the decedent with proper hygiene, including but not limited

to, a shower, clean clothes and clean bed linens; failing to assist the decedent with proper hygiene;

failing to provide the decedent with a clean environment; disregarding and/or ignoring decedent's

complaints, distress and/or requests for help; failing to ensure the decedent was timely and/or

properly assessed by medical and/or mental health services; failing to communicate with medical

and/or mental health services of the urgent and/or emergent need to exam, evaluate and/or assess the

decedent; failing to refer, and/or timely refer, the decedent to outside services for the decline in her

physical and/or mental conditions; delaying the proper care and/or treatment of the decedent; failing

to implement, follow and/or enforce policies, procedures and/or protocols for the proper care and/or

safety of the inmates at the Correctional Facility; failing to implement, follow and/or enforce

policies, procedures and/or protocols to ensure continuity of medical and/or mental health care and/or treatment for the inmates at the Correctional Facility; failing to orient and/or properly train, instruct and/or educate their agents, servants, employees, staff, personnel, contractors, and/or sub-contractors in the intake, assessment, screening, monitoring, supervision, care, safety, and/or well-being of the inmates; failing to properly train, instruct and/or educate their agents, servants, employees, staff, personnel, contractors, and/or sub-contractors in regulations, policies, procedures, protocols, and/or guidelines for the intake, assessment, screening, monitoring, supervision, care, safety, and/or well-being of the inmates; failing to ensure their agents, servants, employees, staff, personnel, contractors, and/or sub-contractors complied with regulations, policies, procedures, protocols, and/or guidelines pertaining to the intake, assessment, screening, monitoring, supervision, care, safety, and/or well-being of the inmates; failing to provide in-service continuing education programs for its agents, servants, employees, staff, personnel, contractors, and/or sub-contractors; failing to properly and/or adequately oversee, monitor and/or supervise their agents, servants, employees, staff, personnel, contractors, and/or sub-contractors; hiring, employing and/or contracting with agents, servants, employees, staff, personnel, contractors, and/or sub-contractors who were incompetent, inexperienced, unqualified, and/or not properly trained in the care, custody, management, and/or supervision of the inmates; hiring, employing and/or contracting with medical and/or other personnel who were incompetent, inexperienced, unqualified, and/or not properly trained in the mental and physical care and treatment of the inmates; causing, allowing and/or contributing to the decedent's deteriorating physical and/or mental health, terminal illness and/or death; causing the decedent to suffer unnecessary harm, injury, pain and suffering, mental anguish and distress, and wrongful death; violating the decedent's state and/or federal constitutional rights;

choosing to disregard their duties and responsibilities in the care, custody and/or supervision of the

decedent; failing to exercise due diligence in the care of the decedent as was necessary under the

circumstances; failing to exercise reasonable and/or ordinary care to prevent harm and injury to the

decedent; needlessly endangering the decedent; creating an unsafe environment for the decedent;

neglecting the decedent; failing to provide for the health and well-being of the decedent; exposing

the decedent to an increased risk of harm; breaching their legal duty to the decedent; failing to

provide inmate care services in compliance with applicable Federal, State and/or local laws, rules,

codes, statutes, ordinances, regulations, policies, and/or standards; failing to develop and/or maintain

administrative and/or operational policies and/or procedures in accordance with New York State,

Federal and/or local laws, rules, statutes, codes, regulations, and/or ordinances pertaining to

correctional facilities; failing to develop, implement and/or maintain a quality assurance program for

providing medical and mental health care services to the inmates; breaching their legal duty to the

decedent; failing to operate the Correctional Facility in compliance with laws, rules, regulations,

policies, procedures, protocols, and/or standards; and/or were otherwise careless, reckless, negligent,

grossly negligent, and/or acted willfully, wantonly, egregiously, and/or with reckless disregard and

indifference, in their responsibilities, care, custody, control, management, and/or supervision of the

decedent.

50.    As a direct, sole and proximate cause of the defendants' careless, reckless, negligent,

grossly negligent, willful, wanton, and/or egregious conduct, as stated herein, and without any fault

on the part of the plaintiff or plaintiff's decedent contributing thereto, the plaintiff's decedent was

caused to and did sustain serious personal injuries and harm, pain and suffering, emotional and

mental distress, fear of impending death, and wrongful death, and was caused to incur expenses for medical care and treatment.

51.    The defendants acted with reckless disregard and indifference to the health, well-being, safety, and life of the decedent for which plaintiff is entitled to punitive damages.

52.    Plaintiff brings this cause of action under the pertinent New York and/or Federal Statutes for decedent's personal injuries and harm, conscious pain and suffering, emotional and mental distress, fear of impending death, and wrongful death, and for the damages and losses to decedent's estate.

53.    By reason of the foregoing, the plaintiff claims damages in an amount that exceeds the jurisdictional limits of all lower Courts otherwise having jurisdiction over this matter.

## SECOND CAUSE OF ACTION
## AGAINST DEFENDANTS CBH MEDICAL, P.C.,
## NAZIF CHOWDHURY, M.D., NABIN ADHIKARI, M.D.
## AND NANCY MENTER, R.N.
## ~~DEF CORPORATIONS, JANE DOES, JOHN DOES,~~
## ~~JANE ROES, AND JOHN ROES~~

54.    Plaintiff repeats and realleges paragraphs "1" through "53" of his Third Amended Complaint as if set forth fully herein and further states and alleges:

55.    Upon information and belief, at all times relevant hereto, the defendants, individually and/or through their agents, servants and/or employees, ~~and/or sub-contractors,~~ held themselves out as being physicians and/or medical personnel specializing and/or skilled in the care and treatment of incarcerated persons suffering from physical and medical ailments and conditions.

56.    Upon information and belief, at all times relevant hereto, the defendants undertook to care for and treat the inmates of the Oneida County Correctional Facility.

57.     Upon information and belief, at all times relevant hereto, the defendants undertook to provide medical health services to the inmates at the Oneida County Correctional Facility, including the decedent, for which a patient-physician relationship was established.

58.     The defendants had an initial and ongoing duty to provide adequate, competent, proper, and/or timely medical health care and treatment to the plaintiff's decedent.

59.     The defendants' medical health care and treatment of the plaintiff's decedent was rendered in such a careless, reckless and negligent manner as to constitute negligence, professional negligence and/or malpractice.

60.     That such negligence, professional negligence and/or malpractice consisted in part of failing to perform an assessment of the decedent upon and/or following intake; failing to perform an adequate, proper, thorough, and/or timely assessment of the decedent throughout her incarceration; failing to screen and/or properly and/or timely screen the decedent for medical, mental and/or communicable conditions and/or illnesses, including but not limited to, COVID-19, drug and/or alcohol intoxication and/or withdraw and/or suicidal ideation; failing to perform a body search and/or a thorough and/or timely body search of the decedent for contraband; failing to familiarize themselves with the decedent's medical, social and mental health history; failing to review and/or timely review decedent's initial intake assessment completed by personnel of Oneida County Correctional Facility; failing to review existing medical records for the decedent; failing to perform complete physical examinations on the decedent; disregarding decedent's history of drug and alcohol abuse; disregarding decedent's mental health history; disregarding decedent's medication requirements; failing to address and/or attend to decedent's medical and/or mental health care needs; failing to provide the decedent with necessary medications; denying decedent necessary

medications; disregarding an emergent referral to assess and evaluate the decedent for drug and/or

alcohol intoxication and/or detoxification; failing to treat and/or properly and/or timely treat the

decedent for drug and/or alcohol detoxification; failing to ensure decedent received mental health

services; failing to take and/or document the decedent's temperature, vital signs and/or oxygen

saturations upon admission to, and/or throughout her incarceration at, the Oneida County

Correctional Facility; failing to implement, follow, enforce, and/or abide by CDC and/or internal

protocols and/or guidelines for COVID-19 management; failing to physically observe and/or assess

the decedent cell side upon her continued refusals to appear for a medical intake evaluation; failing

to explain, and/or properly explain, the consequences of refusing the medical evaluation to the

decedent, including but not limited to, potential adverse health effects; failing to thoroughly and/or

properly complete the refusal forms, including but not limited to, documenting the decedent's

reasons for refusal and/or the consequences of refusing; failing to recognize and/or consider

decedent's clinical incapacitation and/or incompetence to refuse medical and/or mental health care;

failing to conduct daily assessments on the decedent for drug and/or alcohol detoxification; failing to

conduct medical rounds on decedent; failing to conduct routine, regular and/or timely medical

rounds on decedent; failing to initiate and/or follow protocol for an inmate on medical constant

supervision; failing to initiate and/or follow hunger strike and/or substance abuse withdrawal

protocols; relying on non-medical employees, staff and/or personnel of Oneida County Correctional

Facility to relay pertinent medical information concerning decedent's complaints, behaviors,

mentation, signs, symptoms, and/or physical and/or mental changes and/or declines; failing to

perform a medical evaluation of the decedent upon notification of decedent's refusals, complaints,

behaviors, mentation, signs, symptoms, and/or physical and/or mental changes and/or declines;

failing to refer the decedent to mental health services; failing to communicate and/or notify, and/or

timely communicate and/or notify, proper medical and/or mental health staff and/or personnel of

decedent's refusals, complaints, behaviors, mentation, signs, symptoms, and/or physical and/or

mental changes and/or declines; failing to establish and/or maintain a proper, adequate, thorough,

accurate, and/or timely medical chart and/or medical logs for the decedent; failing to maintain

legible and/or comprehensible medical notes and/or logs on the decedent; failing to review and/or

timely review documentation of decedent's refusals and/or complaints, behaviors, mentation, signs,

symptoms, and/or physical and/or mental changes and/or declines; reporting and/or documenting

contradictory and/or misinformation in decedent's medical chart; disregarding decedent's refusal

and/or inability to eat; disregarding decedent's lack of proper and/or adequate hydration;

disregarding decedent's weakened condition, inability to get out of bed, ambulate and/or toilet

herself; disregarding decedent's poor and/or lack of hygiene, with knowledge that she was urinating

on herself, covered in feces and/or otherwise incontinent; failing to recognize and/or disregarding

signs and/or symptoms of decedent's deteriorating physical and/or mental health condition; failing to

treat the decedent for COVID-19; disregarding decedent's distress and cries for help; failing to

ensure the decedent received mental health services; failing to provide the decedent with adequate,

proper and/or timely medical care and treatment; failing to issue proper and/or timely medical and/or

mental health orders for the decedent; failing to follow prescribed medical and/or mental health

orders; disregarding medical and/or mental health orders; disregarding decedent's mental and/or

physical deterioration; failing to screen, evaluate, test, and treat the decedent for serious and life-

threatening medical conditions; diagnosing the decedent without a physical and/or mental

assessment or examination; improperly diagnosing the decedent; failing to consider differential

diagnoses; failing to provide the decedent with continuity of care; failing to have a physician on call

to attend to the medical needs of the inmates, particularly emergency and/or life-threatening

conditions; failing to oversee and/or supervise nursing staff in the care and treatment of the inmates;

failing to refer and/or timely refer the decedent to the hospital for evaluation, testing and treatment;

failing to recognize decedent's dire need for critical medical care; failing to implement a chronic

care plan for the decedent; denying and/or delaying proper and timely medical care and treatment to

the decedent; causing and/or allowing the decedent to become and remain in an unstable and/or

critical medical condition; failing to properly oversee and/or supervise the decedent's care and

treatment; failing to implement, follow and/or abide by policies, procedures, protocols, and/or

guidelines for the care and treatment of inmates who are at risk for drug and/or alcohol withdraw;

failing to follow and/or abide by regulations, policies, procedures, protocols, and/or guidelines for

the care, safety, health, and/or well-being of the decedent; violating and/or disregarding regulations,

policies, procedures, protocols and/or guidelines for the care, safety, health, and/or well-being of the

decedent; failing to develop and/or maintain administrative and/or operational policies and/or

procedures in accordance with New York State, Federal and/or local laws, rules, statutes, codes,

regulations, and/or ordinances pertaining to correctional facilities; failing to develop, implement

and/or maintain a quality assurance program for providing medical and mental health care services

to the inmates; hiring, employing and/or contracting with physicians, physician assistants, nurses,

and/or other medical personnel who were incompetent, inexperienced, unqualified, and/or not

properly trained to provide good and proper medical health care to the inmates; hiring, employing

and/or contracting with physicians, physician assistants, nurses, and/or other medical personnel who

were incompetent, inexperienced, unqualified, and/or not properly trained to oversee and/or

supervise the medical health care of the inmates; failing to orient, train, educate, and/or instruct their medical staff and personnel and/or sub-contractors in the proper medical health care and treatment of the inmates; failing to provide in-service continuing education programs for their agents, servants, employees, staff, and/or personnel; and/or sub-contractors; failing to properly and/or adequately oversee, monitor and/or supervise their medical staff and personnel; and/or sub-contractors; failing to properly train, instruct and/or educate their medical staff and personnel and/or sub-contractors in regulations, policies, procedures, protocols, and/or guidelines for the medical health care of the inmates; failing to ensure the medical staff and personnel and/or sub-contractors complied with regulations, policies, procedures, protocols, and/or guidelines pertaining to the medical health care of the inmates; failing to have sufficient medical staff and personnel to attend to, care for and/or treat the inmates; failing to have adequate staffing schedules to attend to, care for and/or treat the inmates; neglecting the decedent; failing to provide for the health and well-being of the decedent; exposing the decedent to an increased risk of harm; causing, allowing and/or contributing to the decedent's deteriorating physical and/or mental health, terminal illness and/or death; causing the decedent to suffer unnecessary harm, injury, pain and suffering, mental anguish and distress, and wrongful death; needlessly endangering the decedent; creating an unsafe environment for the decedent; failing to provide medical health care and treatment in accordance with approved and accepted medical practices and standards as established and practiced by the medical community; rendering medical health care and treatment in a negligent, unskillful and/or improper manner; violating the decedent's state and/or federal constitutional rights; choosing to disregard their duties and responsibilities in the care and treatment of the decedent; failing to exercise reasonable and/or ordinary care to prevent harm and injury to the decedent; failing to exercise due diligence in the care and treatment of the

decedent as was necessary under the circumstances; providing sub-standard care and treatment to the decedent; breaching their legal duty to the decedent as recognized by and accepted by other medical professionals under similar circumstances; failing to provide inmate care and treatment in compliance with applicable Federal, State and local laws, rules, codes, statutes, ordinances, regulations, policies, and/or standards; failing to provide the decedent with adequate, competent, proper, and/or timely medical health care services and treatment; and/or otherwise rendering medical care and treatment in a careless, reckless, negligent, and/or unprofessional manner.

61.     All of the aforesaid acts of negligence fall below the standard of care, skill and treatment recognized by other similar health care providers as being acceptable under similar circumstances and conditions.

62.     That as a direct, sole and proximate cause of the negligence and/or malpractice of the defendants, as stated herein, without any fault on the part of the plaintiff or plaintiff's decedent contributing thereto, the plaintiff's decedent was caused to and did sustain serious personal injuries and harm, pain and suffering, emotional and mental distress, fear of impending death, and wrongful death, and was caused to incur expenses for medical care and treatment.

63.     The defendants acted with reckless disregard and indifference to the health, well-being, safety, and life of the decedent for which plaintiff is entitled to punitive damages.

64.     Plaintiff brings this cause of action under the pertinent New York and/or Federal Statutes for decedent's personal injuries and harm, conscious pain and suffering, emotional and mental distress, fear of impending death, and wrongful death, and for the damages and losses to decedent's estate.

65.     By reason of the foregoing, the plaintiff claims damages in an amount that exceeds the jurisdictional limits of all lower Courts otherwise having jurisdiction over this matter.

## THIRD CAUSE OF ACTION
### AGAINST DEFENDANTS HELIO HEALTH, INC.
### AND DOMENICA BUMGOLO
### ~~DEF CORPORATIONS, JANE DOES, JOHN DOES,~~
### ~~JANE ROES, AND JOHN ROES~~

66.     Plaintiff repeats and realleges paragraphs "1" through "65" of his Third Amended Complaint as if set forth fully herein and further states and alleges:

67.     Upon information and belief, at all times relevant hereto, the defendants, individually and/or through their agents, servants and/or employees, ~~and/or sub-contractors,~~ held themselves out as being physicians and/or medical personnel specializing and/or skilled in the care and treatment of incarcerated persons suffering from drug and/or alcohol dependency and/or detoxification and/or mental health ailments and conditions.

68.     Upon information and belief, at all times relevant hereto, the defendants undertook to care for and treat the inmates of the Oneida County Correctional Facility.

69.     Upon information and belief, at all times relevant hereto, the defendants undertook to provide mental health care services to the inmates at the Oneida County Correctional Facility, including the decedent, for which a patient-physician relationship was established.

70.     The defendants had an initial and ongoing duty to provide adequate, competent, proper, and/or timely mental health care services and treatment to the plaintiff's decedent.

71.     The defendants' mental health care and treatment of the plaintiff's decedent was rendered in such a careless, reckless and negligent manner as to constitute negligence, professional negligence and/or malpractice.

72.    That such negligence, professional negligence and/or malpractice consisted in part of failing to perform a mental health assessment of the decedent upon and/or following intake; failing to perform an adequate, proper, thorough, and/or timely assessment of the decedent throughout her incarceration; failing to screen and/or properly and/or timely screen the decedent for mental health conditions and/or illnesses, including but not limited to, drug and/or alcohol intoxication and/or withdraw and/or suicidal ideation; failing to familiarize themselves with the decedent's medical, social and mental health history; failing to review and/or timely review decedent's initial intake assessment completed by personnel of Oneida County Correctional Facility; failing to review existing medical records for the decedent; failing to perform complete mental health assessments and evaluations on the decedent; disregarding decedent's history of drug and alcohol abuse; disregarding decedent's mental health history; disregarding decedent's medication requirements; failing to address and/or attend to decedent's mental health care needs; failing to provide the decedent with necessary medications; denying decedent necessary medications; disregarding an emergent referral to assess and evaluate the decedent for drug and/or alcohol intoxication and/or detoxification; failing to treat and/or properly and/or timely treat the decedent for drug and/or alcohol detoxification; disregarding a referral for mental health services; failing to physically observe and/or assess the decedent cell side upon her continued refusals to appear for medical and/or mental intake evaluations; failing to thoroughly and/or properly complete refusal forms, including but not limited to, documenting the decedent's reasons for refusal and/or the consequences of refusing; failing to recognize and/or consider decedent's clinical incapacitation and/or incompetence to refuse medical and/or mental health care; failing to conduct daily assessments on the decedent for drug and/or alcohol detoxification; failing to conduct mental health rounds on decedent; failing to conduct

routine, regular and/or timely mental health rounds on decedent; failing to initiate and/or follow

protocol for an inmate on medical constant supervision; failing to initiate and/or follow hunger strike

and/or substance abuse withdrawal protocols; relying on non-medical employees, staff and/or

personnel of Oneida County Correctional Facility to relay pertinent medical and/or mental health

information concerning decedent's complaints, behaviors, mentation, signs, symptoms, and/or

physical and/or mental changes and/or declines; failing to perform a mental health evaluation of the

decedent upon notification of decedent's refusals, complaints, behaviors, mentation, signs,

symptoms, and/or physical and/or mental changes and/or declines; failing to communicate and/or

notify, and/or timely communicate and/or notify, proper medical and/or mental health staff and/or

personnel of decedent's refusals, complaints, behaviors, mentation, signs, symptoms, and/or physical

and/or mental changes and/or declines; failing to establish and/or maintain a proper, adequate,

thorough, accurate, and/or timely mental health chart and/or mental health logs for the decedent;

failing to maintain legible and/or comprehensible medical notes and/or logs on the decedent; failing

to review and/or timely review documentation of decedent's refusals and/or complaints, behaviors,

mentation, signs, symptoms, and/or physical and/or mental changes and/or declines; reporting and/or

documenting contradictory and/or misinformation in decedent's medical chart; disregarding

decedent's refusal and/or inability to eat; disregarding decedent's lack of proper and/or adequate

hydration; disregarding decedent's weakened condition, inability to get out of bed, ambulate and/or

toilet herself; disregarding decedent's poor and/or lack of hygiene, with knowledge that she was

urinating on herself, covered in feces and/or otherwise incontinent; failing to recognize and/or

disregarding signs and/or symptoms of decedent's deteriorating physical and/or mental health

condition; disregarding decedent's distress and cries for help; failing to provide the decedent with

mental health services; failing to provide the decedent with adequate, proper and/or timely mental

health care and treatment; failing to issue proper and/or timely mental health orders for the decedent;

failing to follow prescribed mental health orders; disregarding mental health orders; disregarding

decedent's mental and/or physical deterioration; failing to screen, evaluate, test, and treat the

decedent for serious and/or life-threatening mental health conditions; diagnosing the decedent

without a mental health assessment or examination; improperly diagnosing the decedent; failing to

consider differential diagnoses; failing to provide the decedent with continuity of care; failing to

have a physician or other mental health staff on call to attend to the mental health needs of the

inmates, particularly emergency and/or life-threatening conditions; failing to oversee and/or

supervise mental health staff in the care and treatment of the inmates; failing to refer and/or timely

refer the decedent to proper medical and/or mental health providers for evaluation, testing and

treatment; failing to recognize decedent's dire need for critical medical care; failing to implement a

chronic care plan for the decedent; denying and/or delaying proper and timely mental health care and

treatment to the decedent; causing and/or allowing the decedent to become and remain in an unstable

and/or critical medical condition; failing to properly oversee and/or supervise the decedent's care

and treatment; failing to implement, follow and/or abide by policies, procedures, protocols, and/or

guidelines for the care and treatment of inmates who are at risk for drug and/or alcohol withdraw

and/or suicidal; failing to follow and/or abide by regulations, policies, procedures, protocols, and/or

guidelines for the care, safety, health, and/or well-being of the decedent; violating and/or

disregarding regulations, policies, procedures, protocols and/or guidelines for the care, safety, health,

and/or well-being of the decedent; failing to develop and/or maintain administrative and/or

operational policies and/or procedures in accordance with New York State, Federal and/or local

laws, rules, statutes, codes, regulations, and/or ordinances pertaining to correctional facilities; failing to develop, implement and/or maintain a quality assurance program for providing mental health care services to the inmates; hiring, employing and/or contracting with physicians, psychiatrists, psychologists, nurses, therapists, and/or other mental health personnel who were incompetent, inexperienced, unqualified, and/or not properly trained to provide good and proper mental health care to the inmates; hiring, employing and/or contracting with physicians, psychiatrists, psychologists, nurses, therapists, and/or other mental health who were incompetent, inexperienced, unqualified, and/or not properly trained to oversee and/or supervise the mental health care of the inmates; failing to orient, train, educate, and/or instruct their mental health staff and personnel ~~and/or sub-contractors~~ in the proper mental health care and treatment of the inmates; failing to provide in-service continuing education programs for their agents, servants, employees, staff, and personnel; ~~and/or sub-contractors;~~ failing to properly and/or adequately oversee, monitor and/or supervise their mental health staff and personnel; ~~and/or sub-contractors;~~ failing to properly train, instruct and/or educate the  mental health staff and personnel ~~and/or sub-contractors~~ in regulations, policies, procedures, protocols, and/or guidelines for the mental health care of the inmates; failing to ensure the mental health staff and personnel ~~and/or sub-contractors~~ complied with regulations, policies, procedures, protocols, and/or guidelines pertaining to the mental health care of the inmates; failing to have sufficient mental health staff and personnel to attend to, care for and/or treat the inmates; failing to have adequate staffing schedules to attend to, care for and/or treat the inmates; neglecting the decedent; failing to provide for the health and well-being of the decedent; exposing the decedent to an increased risk of harm; causing, allowing and/or contributing to the decedent's deteriorating physical and/or mental health, terminal illness and/or death; causing the decedent to suffer

unnecessary harm, injury, pain and suffering, mental anguish and distress, and wrongful death; needlessly endangering the decedent; creating an unsafe environment for the decedent; failing to provide mental health care and treatment in accordance with approved and accepted medical and/or mental health practices and standards as established and practiced by the medical and/or mental health community; rendering mental health care and treatment in a negligent, unskillful and/or improper manner; violating the decedent's state and/or federal constitutional rights; choosing to disregard their duties and responsibilities in the care and treatment of the decedent; failing to exercise reasonable and/or ordinary care to prevent harm and injury to the decedent; failing to exercise due diligence in the care and treatment of the decedent as was necessary under the circumstances; providing sub-standard care and treatment to the decedent; breaching their legal duty to the decedent as recognized by and accepted by other medical and/or mental health professionals under similar circumstances; failing to provide inmate care and treatment in compliance with applicable Federal, State and local laws, rules, codes, statutes, ordinances, regulations, policies, and/or standards; failing to provide the decedent with adequate, competent, proper, and/or timely mental health care services and treatment; and/or otherwise rendering mental health care and treatment in a careless, reckless, negligent, and/or unprofessional manner.

73.    All of the aforesaid acts of negligence fall below the standard of care, skill and treatment recognized by other similar health care providers as being acceptable under similar circumstances and conditions.

74.    That as a direct, sole and proximate cause of the negligence and/or malpractice of the defendants, as stated herein, without any fault on the part of the plaintiff or plaintiff's decedent contributing thereto, the plaintiff's decedent was caused to and did sustain serious personal injuries

and harm, pain and suffering, emotional and mental distress, fear of impending death, and wrongful death, and was caused to incur expenses for medical care and treatment.

75.    The defendants acted with reckless disregard and indifference to the health, well-being, safety, and life of the decedent for which plaintiff is entitled to punitive damages.

76.    Plaintiff brings this cause of action under the pertinent New York and/or Federal Statutes for decedent's personal injuries and harm, conscious pain and suffering, emotional and mental distress, fear of impending death, and wrongful death, and for the damages and losses to decedent's estate.

77.    By reason of the foregoing, the plaintiff claims damages in an amount that exceeds the jurisdictional limits of all lower Courts otherwise having jurisdiction over this matter.

## FOURTH CAUSE OF ACTION
## AGAINST DEFENDANTS CBH MEDICAL, P.C.
## AND NAZIF CHOWDHURY, M.D.
## ~~AND DEF CORPORATIONS~~

78.    Plaintiff repeats and realleges paragraphs "1" through "77" of his Third Amended Complaint as if set forth fully herein and further states and alleges:

79.    Upon information and belief, at all times relevant hereto, the defendants held themselves out to the public as a medical group and practice skilled in the care and treatment of persons such as the plaintiff's decedent.

80.    Upon information and belief, at all times relevant hereto, the defendants were comprised of, employed and/or contracted with, physicians, physician assistants, nurses, and/or other medical personnel for the purpose of providing medical health care and treatment to inmates at the

Oneida County Correctional Facility, including but not limited to, Nabin Adhikari, M.D. and Nancy Menter, R.N.

81.     The defendants had an initial and ongoing duty to employ and/or contract with only those physicians and medical personnel who possessed adequate training, experience, qualifications, skill, and competence necessary to the performance of medical health care and treatment.

82.     The defendants were careless, reckless and/or negligent in the medical health care and treatment of the plaintiff's decedent by improperly employing, contracting with and/or providing physicians and/or medical personnel who lacked adequate training, experience, qualifications, skills, and/or competence to render proper medical health care and treatment; failing to adequately investigate their physicians and/or medical personnel and/or sub-contractors with respect to their credentials, training, qualifications, experience, and/or competence; failing to adequately and/or properly oversee, monitor, supervise, direct, and/or instruct their physicians and medical personnel; and/or sub-contractors; failing to provide adequately trained, skilled, qualified, experienced, and/or competent physicians and/or medical personnel capable of properly assessing, evaluating, diagnosing, and/or treating persons such as the plaintiff's decedent; failing to set and/or maintain adequate standards and/or guidelines for assessing, evaluating, diagnosing, monitoring, and/or treating the inmates at the Oneida County Correctional Facility, including but not limited to, those who suffered with drug and/or alcohol abuse and/or withdrawal and/or medical and/or mental health illnesses and/or conditions; failing to provide the plaintiff's decedent with medical health care and treatment in accordance with approved and accepted medical practices and standards as established and practiced by the medical community; and otherwise breaching their duty to provide the plaintiff's decedent with good, adequate and/or proper medical health care and treatment.

83.     Upon information and belief, the medical health care and treatment of plaintiff's decedent was rendered in such a careless, reckless, negligent, and/or unprofessional manner, and/or fell below the standard of skill, care and treatment recognized by other similar health care providers as being acceptable under similar circumstances and conditions, as to constitute negligence, professional negligence and/or malpractice.

84.     As a direct, sole and proximate cause of the negligence and/or malpractice of the defendants, their agents, servants and/or employees, and/or sub-contractors, including but not limited to, Nabin Adhikari, M.D. and Nancy Menter, R.N., without any fault on the part of the plaintiff or plaintiff's decedent contributing thereto, the plaintiff's decedent was caused to and did sustain serious personal injuries and harm, pain and suffering, emotional and mental distress, fear of impending death, and wrongful death, and was caused to incur expenses for medical care and treatment.

85.     The defendants acted with reckless disregard and indifference to the health, well-being, safety, and life of the decedent for which plaintiff is entitled to punitive damages.

86.     Plaintiff brings this cause of action under the pertinent New York and/or Federal Statutes for decedent's personal injuries and harm, conscious pain and suffering, emotional and mental distress, fear of impending death, and wrongful death, and for the damages and losses to decedent's estate.

87.     By reason of the foregoing, the plaintiff claims damages in an amount that exceeds the jurisdictional limits of all lower Courts otherwise having jurisdiction over this matter.

### FIFTH CAUSE OF ACTION
### AGAINST DEFENDANTS HELIO HEALTH, INC.
### AND DEF CORPORATIONS

88.     Plaintiff repeats and realleges paragraphs "1" through "87" of his Third Amended

Complaint as if set forth fully herein and further states and alleges:

89.     Upon information and belief, at all times relevant hereto, the defendants held

themselves out to the public as a facility skilled in the care and treatment of persons with substance

use and/or mental health disorders, such as the plaintiff's decedent.

90.     Upon information and belief, at all times relevant hereto, the defendants were

comprised of, employed and/or contracted with, physicians, psychiatrists, psychologists, nurses,

therapists, and/or other medical and/or mental health personnel for the purpose of providing mental

health care and treatment to inmates at the Oneida County Correctional Facility, including but not

limited to, Domenica Bumgolo.

91.     The defendants had an initial and ongoing duty to employ and/or contract with only

those medical and/or mental health personnel who possessed adequate training, experience,

qualifications, skill, and competence necessary to the performance of mental health care and

treatment.

92.     The defendants were careless, reckless and/or negligent in the mental health care and

treatment of the plaintiff's decedent by improperly employing, contracting with and/or providing

physicians and/or mental health personnel who lacked adequate training, experience, qualifications,

skills, and/or competence to render proper mental health care and treatment; failing to adequately

investigate their physicians and/or mental health personnel and/or sub-contractors with respect to

their credentials, training, qualifications, experience, and/or competence; failing to adequately and/or

properly oversee, monitor, supervise, direct, and/or instruct their physicians and/or mental health personnel; ~~and/or sub-contractors;~~ failing to provide adequately trained, skilled, qualified, experienced, and/or competent physicians and/or mental health personnel capable of properly assessing, evaluating, diagnosing, and/or treating persons such as the plaintiff's decedent; failing to set and/or maintain adequate standards and/or guidelines for assessing, evaluating, diagnosing, monitoring, and/or treating the inmates at the Oneida County Correctional Facility, including but not limited to, those who suffered with drug and/or alcohol abuse and/or withdrawal and/or medical and/or mental health illnesses and/or conditions; failing to provide the plaintiff's decedent with mental health care and treatment in accordance with approved and accepted medical and/or mental health practices and standards as established and practiced by the medical and/or mental health community; and otherwise breaching their duty to provide the plaintiff's decedent with good, adequate and/or proper mental health care and treatment.

93.    Upon information and belief, the mental health care and treatment of plaintiff's decedent was rendered in such a careless, reckless, negligent, and/or unprofessional manner, and/or fell below the standard of skill, care and treatment recognized by other similar health care providers as being acceptable under similar circumstances and conditions, as to constitute negligence, professional negligence and/or malpractice.

94.    As a direct, sole and proximate cause of the negligence and/or malpractice of the defendants, their agents, servants and/or employees, including but not limited to, Domenica Bumgolo, ~~and/or sub-contractors,~~ without any fault on the part of the plaintiff or plaintiff's decedent contributing thereto, the plaintiff's decedent was caused to and did sustain serious personal injuries

and harm, pain and suffering, emotional and mental distress, fear of impending death, and wrongful death, and was caused to incur expenses for medical care and treatment.

95.    The defendants acted with reckless disregard and indifference to the health, well-being, safety, and life of the decedent for which plaintiff is entitled to punitive damages.

96.    Plaintiff brings this cause of action under the pertinent New York and/or Federal Statutes for decedent's personal injuries and harm, conscious pain and suffering, emotional and mental distress, fear of impending death, and wrongful death, and for the damages and losses to decedent's estate.

97.    By reason of the foregoing, the plaintiff claims damages in an amount that exceeds the jurisdictional limits of all lower Courts otherwise having jurisdiction over this matter.

## SIXTH CAUSE OF ACTION
## AGAINST THE DEFENDANTS

98.    Plaintiff repeats and realleges paragraphs "1" through "97" of his Third Amended Complaint as if set forth fully herein and further states and alleges:

99.    At all times relevant hereto, the decedent, while incarcerated at the Oneida County Correctional Facility, was completely dependent on the defendants for medical and mental health care and treatment.

100.    Upon information and belief, at all times relevant hereto, the defendants, acting under color of state law, violated the decedent's civil rights pursuant to 42 U.S.C. §1983 and/or constitutional rights pursuant to the Eighth Amendment to the U.S. Constitution and/or Article I, §5 of the New York State Constitution by denying and/or depriving the decedent's right to medical and/or mental health care and/or treatment and/or adequate, proper and/or timely medical and/or

mental health care and/or treatment, while incarcerated at the Oneida County Correctional Facility.

101.    Upon information and belief, at all times relevant hereto, the defendants, individually and/or collectively, and/or acting under color of state law, implemented, employed and/or sanctioned policies, procedures, protocols, practices, and/or customs for the supervision, management, safety, and/or medical and/or mental health care and/or treatment, of the inmates.

102.    Upon information and belief, at all times relevant hereto, the defendants, individually and/or collectively, and/or acting under color of state law, failed to enforce, follow and/or ensure compliance with, and/or directly violated, policies, procedures, protocols, practices, and/or customs in the supervision, management, safety, care, and/or treatment of the decedent pertaining in part to assessing, screening, testing, and/or monitoring the decedent for COVID-19 infection, drug intoxication and/or drug withdrawal; conducting medical and/or mental health assessments; addressing her continued refusals to undergo medical and/or mental health assessments; adequately informing the decedent of potential adverse health effects and/or consequences for refusing to undergo medical and/or mental health assessments; monitoring the decedent's medical and/or mental health status after placing her on withdrawal and hunger strike protocols, and/or when she exhibited changes and/or declines in her physical and/or mental state; notifying medical and/or mental health personnel of decedent's continued refusals to undergo medical and/or mental health assessments; communicating changes and/or declines in the decedent's physical and/or mental state to the appropriate medical and/or mental health personnel; accurately and/or thoroughly documenting encounters with the decedent; accurately and/or thoroughly documenting changes and/or declines in the decedent's physical and/or mental state; maintaining the decedent on necessary medications for her medical and/or mental health conditions; completing ordered treatments; sending the decedent to

the hospital for testing and/or a higher level of care when she continued to refuse to be assessed and/or exhibited signs and symptoms of deterioration in her physical and/or mental state.

103.    Upon information and belief, at all times relevant hereto, the defendants, individually and/or collectively, and/or acting under color of state law, were responsible for training and/or educating their respective officials, officers, agents, servants, employees, staff, personnel, contractors, and/or sub-contractors in the policies, procedures, protocols, practices, and/or customs for the supervision, management, safety, care, and/or treatment of the inmates.

104.    Upon information and belief, at all times relevant hereto, the defendants, individually and/or collectively, and/or acting under color of state law, failed to train and/or educate, and/or properly and/or adequately train and/or educate, their respective officials, officers, agents, servants, employees, staff, personnel, contractors, and/or sub-contractors in the policies, procedures, protocols, practices, and/or customs pertaining to the supervision, management, safety, care, and/or treatment of the inmates, and/or failed to provide adequate and/or proper supervision over their respective officials, officers, agents, servants, employees, staff, personnel, contractors, and/or sub-contractors to ensure compliance with the policies, procedures, protocols, practices, and/or customs for the supervision, management, safety, care, and/or treatment of the inmates.

105.    That defendants' denial and/or deprivation of medical and/or mental health care and/or treatment, and/or adequate, proper and/or timely medical and/or mental health care and/or treatment, amounted to a deliberate indifference to the critical medical and mental health care needs of the decedent, a conscious disregard of a serious risk of substantial harm and death to the decedent and/or wanton, willful and/or reckless treatment to the detriment of the health of the decedent.

106.    The defendants deprived and/or denied the decedent of medical and/or mental health

care and/or treatment in part by failing to perform an assessment of the decedent upon and/or following intake; failing to perform an adequate, proper, thorough, and/or timely assessment of the decedent throughout her incarceration; failing to screen and/or properly and/or timely screen the decedent for medical, mental and/or communicable conditions and/or illnesses, including but not limited to, COVID-19, drug and/or alcohol intoxication and/or withdraw and/or suicidal ideation; failing to follow, and/or ensure compliance with, COVID-19 management protocols; failing to perform complete physical examinations on the decedent; failing to address and/or attend to decedent's medical and/or mental health care needs; failing to provide the decedent with necessary medications; denying decedent necessary medications; disregarding an emergent referral to assess and evaluate the decedent for drug and/or alcohol intoxication and/or detoxification; failing to treat and/or properly and/or timely treat the decedent for drug and/or alcohol detoxification; disregarding a referral for mental health services; failing to take and/or document the decedent's temperature, vital signs and/or oxygen saturations upon admission to, and/or throughout her incarceration at, the Oneida County Correctional Facility; failing to treat the decedent for COVID-19; failing to physically observe and/or assess the decedent cell side upon her continued refusals to appear for a medical intake evaluation; failing to conduct daily assessments on the decedent for drug and/or alcohol detoxification; failing to conduct medical rounds on decedent; failing to place the decedent on medical constant supervision; failing to initiate and/or follow hunger strike and/or substance abuse withdrawal protocols; allowing and/or relying on non-medical employees, staff and/or personnel to relay pertinent medical information concerning decedent's complaints, behaviors, mentation, signs, symptoms, and/or physical and/or mental changes and/or declines; failing to perform a medical and/or mental evaluation of the decedent upon notification of decedent's refusals,

complaints, behaviors, mentation, signs, symptoms, and/or physical and/or mental changes and/or

declines; disregarding decedent's refusal and/or inability to eat; disregarding decedent's lack of

proper and/or adequate hydration; disregarding decedent's weakened condition, inability to get out

of bed, ambulate and/or toilet herself; disregarding decedent's poor and/or lack of hygiene, with

knowledge that she was urinating on herself, covered in feces and/or otherwise incontinent; failing to

recognize and/or disregarding signs and/or symptoms of decedent's deteriorating physical and/or

mental health condition; disregarding signs and/or symptoms of drug and/or alcohol withdrawal;

disregarding decedent's complaints, distress and/or cries for help; failing to provide the decedent

with mental health services; failing to provide the decedent with adequate, proper and/or timely

medical care and treatment; failing to make proper and/or timely referrals to medical and/or mental

health services; failing to communicate and/or notify and/or timely communicate and/or notify

decedent's behaviors, mentation, refusals, complaints, signs, symptoms, and/or physical and/or

mental changes and/or declines to the proper personnel; failing to communicate with medical and/or

mental health services of the urgent and/or emergent need to exam, evaluate and/or assess the

decedent; relaying improper, inaccurate and/or incomplete information to medical and/or mental

health service providers; withholding medical and/or mental health care and treatment from the

decedent; failing to issue proper and/or timely medical and/or mental health orders for the decedent;

failing to follow prescribed medical and/or mental health orders; disregarding medical and/or mental

health orders; disregarding decedent's mental and/or physical deterioration; failing to screen,

evaluate, test, and treat the decedent for serious and life-threatening medical conditions; diagnosing

the decedent without a physical and/or mental assessment or examination; improperly diagnosing the

decedent; failing to consider differential diagnoses; failing to have a physician on call to attend to the

medical needs of the inmates, particularly emergency and/or life-threatening conditions; failing to refer and/or timely refer the decedent to the hospital for evaluation, testing and treatment; failing to recognize decedent's dire need for critical medical care; failing to implement a chronic care plan for the decedent; denying and/or delaying proper and timely medical and/or mental health care and treatment to the decedent; causing and/or allowing the decedent to become and remain in an unstable and/or critical medical condition; failing to have sufficient medical staff and personnel to attend to, care for and/or treat the inmates; failing to provide for the health and well-being of the decedent; exposing the decedent to an increased risk of harm; causing, allowing and/or contributing to the decedent's deteriorating physical and/or mental health, terminal illness and/or death; causing the decedent to suffer unnecessary harm, injury, pain and suffering, mental anguish and distress, and wrongful death; needlessly endangering the decedent; and otherwise denied, withheld and/or delayed adequate, proper and/or timely medical and/or mental health care and treatment to the decedent.

107.    As a direct, sole and proximate cause of the defendants' violation of decedent's civil and/or constitutional rights, ~~deliberate indifference to the critical medical and mental health care needs of the decedent, conscious disregard of a serious risk of substantial harm and death to the decedent and/or wanton, willful and/or reckless treatment to the detriment of the health of the decedent,~~ the plaintiff's decedent was caused to and did sustain serious personal injuries and harm, pain and suffering, emotional and mental distress, fear of impending death, and wrongful death, and was caused to incur expenses for medical care and treatment.

108.    The defendants acted with reckless disregard and indifference to the health, well-being, safety, and life of the decedent for which plaintiff is entitled to punitive damages.

109.    Plaintiff brings this cause of action under the pertinent New York and/or Federal

Statutes for decedent's personal injuries and harm, conscious pain and suffering, emotional and mental

distress, fear of impending death, and wrongful death, and for the damages and losses to decedent's

estate.

110.    The plaintiff is entitled to attorney's fees pursuant to 42 U.S.C. §1988.

111.    By reason of the foregoing, the plaintiff claims damages in an amount that exceeds the

jurisdictional limits of all lower Courts otherwise having jurisdiction over this matter.

## SEVENTH CAUSE OF ACTION
## AGAINST THE DEFENDANTS

112.    Plaintiff repeats and realleges paragraphs "1" through "111" of his Third Amended

Complaint as if set forth fully herein and further states and alleges:

113.    Upon information and belief, the plaintiff's decedent was caused to and did sustain a

period of conscious pain and suffering prior to her death.

114.    That said conscious pain and suffering was solely, directly and proximately caused

by the negligence, gross negligence and/or malpractice of the defendants, and/or defendants'

deprivation of decedent's civil and/or constitutional rights.

115.    The defendants acted with reckless disregard and indifference to the health, well-

being, safety, and life of the decedent for which plaintiff is entitled to punitive damages.

116.    Plaintiff brings this cause of action under the pertinent New York and/or Federal

Statutes for the decedent's personal injuries and conscious pain and suffering and for the damages and

losses to decedent's estate.

117.    By reason of the foregoing, the plaintiff claims damages in an amount that exceeds the jurisdictional limits of all lower Courts otherwise having jurisdiction over this matter.

## EIGHTH CAUSE OF ACTION
## AGAINST THE DEFENDANTS

118.    Plaintiff repeats and realleges paragraphs "1" through "117" of his Third Amended Complaint as if set forth fully herein and further states and alleges:

119.    Upon information and belief, the plaintiff's decedent was caused to endure a period of shock, fright, emotional trauma, and emotional and mental distress and anguish.

120.    That said shock, fright, emotional trauma, and emotional and mental distress and anguish was solely, directly and proximately caused by the negligence, gross negligence and/or malpractice of the defendants, and/or defendants' deprivation of decedent's civil and/or constitutional rights.

121.    The defendants acted with reckless disregard and indifference to the health, well-being, safety, and life of the decedent for which plaintiff is entitled to punitive damages.

122.    Plaintiff brings this cause of action under the pertinent New York and/or Federal Statutes for the shock, right, emotional trauma, and emotional and mental distress and anguish suffered by the decedent and for the damages and losses to decedent's estate.

123.    By reason of the foregoing, the plaintiff claims damages in an amount that exceeds the jurisdictional limits of all lower Courts otherwise having jurisdiction over this matter.

## PRAYER FOR DAMAGES

**WHEREFORE**, as and for the First, Second, Third, Fourth, Fifth, Sixth, Seventh, and Eighth Causes of Action, the plaintiff demands judgment in an amount which would fairly, fully and

adequately compensate the plaintiff for the injuries, sufferings, damages, and losses sustained by the decedent and decedent's estate and distributees, in an amount that exceeds the jurisdictional limits of all lower courts otherwise having jurisdiction over this matter, together with punitive damages, attorneys' fees, interest, and the costs and disbursements of this action, and for such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby requests trial by jury of all issues herein.

Dated:  April 26, 2024

_____
Jeffrey G. Pomeroy, Esq.
Bar Roll No.: 509051
GREENE REID & POMEROY, PLLC
Attorneys for Plaintiff
173 Intrepid Lane
Syracuse, New York 13205
(315) 492-9665
jpomeroy@greenereid.com

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JOSEPH J. BONANZA, As Administrator of the                    CERTIFICATE OF MERIT
Estate of TERRA LYNN BONANZA, deceased,

                                                             Case No.: 9:23-cv-691 (DNH/ATB)

                            Plaintiff,

-against-

COUNTY OF ONEIDA, ONEIDA COUNTY
SHERIFF'S DEPARTMENT, ONEIDA
COUNTY CORRECTIONAL FACILITY,
CBH MEDICAL, P.C., HELIO HEALTH, INC.,
SHERIFF ROBERT MACIOL, CHIEF DEPUTY
SHERIFF LISA ZUREK, NAZIF CHOWDHURY, M.D.,
NABIN ADHIKARI, M.D., NANCY MENTER, R.N.,
and DOMENICA BUMGOLO DEF CORPORATIONS,
JANE DOES, JOHN DOES, JANE ROES, AND JOHN
ROES, (fictitious names, the true identities
of which are unknown by plaintiff at present).

                            Defendants.

                    Jeffrey G. Pomeroy, Esq., affirms under penalties of perjury as follows:

        1.      I am an attorney duly admitted to practice before the Courts of the State of New

York and am associated with the law firm of Greene Reid & Pomeroy, attorneys for the plaintiff.

        2.      I have reviewed the facts of this case and consulted with a duly certified physician

who is licensed to practice medicine and I believe this physician is knowledgeable of the relevant

issues involved in this particular action, and I have concluded on the basis of such review and

consultation that there is a reasonable basis for the commencement of the action.

Dated:  April 29, 2024

                                  _____

                                  Jeffrey G. Pomeroy, Esq.
                                  Bar Role No.:  509051
                                  GREENE REID & POMEROY, PLLC
                                  Attorneys for Plaintiff
                                  173 Intrepid Lane
                                  Syracuse, NY 13205
                                  (315) 492-9665

*On the Date Written Below LETTERS are Granted by the Surrogate's Court, State of New York as follows:*

File #: 2022-425
Date of Death: April 22, 2021

Name of Decedent:    Terra Lynn Bonanza

Domicile of Decedent:  1011 Churchill Ave, Utica, NY

Fiduciary Appointed:   Joseph J Bonanza
Mailing Address      1011 Churchill Avenue
                     Utica NY 13502

Letters Issued:       **LIMITED LETTERS OF ADMINISTRATION**

Limitations:
**THESE LETTERS ARE LIMITED TO THE ENFORCEMENT OF A RIGHT OF ACTION IN FAVOR OF THE DECEASED OR HIS/HER LEGAL REPRESENTATIVE WHETHER UNDER GENERAL OR SPECIAL PROVISION OF LAW, INCLUDING OBTAINING MEDICAL RECORDS OR OTHER DOCUMENTATION IN RELATION THERETO, AND TO THE DEFENSE OF ANY CLAIM OR CAUSE OF ACTION AGAINST THE DECEASED OR HIS/HER LEGAL REPRESENTATIVE AND SAID ADMINISTRATOR IS RESTRAINED FROM A COMPROMISE OF THE ACTION AND THE ENFORCEMENT OF ANY JUDGMENT THEREON UNTIL THE FURTHER ORDER OF A COURT OF COMPETENT JURISDICTION UPON SATISFACTORY SECURITY.**

THESE LETTERS, granted pursuant to a decree entered by the court, authorize and empower the above-named fiduciary or fiduciaries to perform all acts requisite to the proper administration and disposition of the estate/trust of the Decedent in accordance with the decree and the laws of New York State, subject to the limitations and restrictions, if any, as set forth above.

Dated:  May 16, 2022

IN TESTIMONY WHEREOF,  the seal of the Oneida County Surrogate's Court has been affixed.

WITNESS, Hon Louis P. Gigliotti, Judge of the Oneida County Surrogate's Court.

*Kelly A. Fuller*

Kelly A, Fuller, Chief Clerk

*These Letters are Not Valid Without the Raised Seal of the Oneida County Surrogate's Court*

Attorney:
Christopher Jude Pelli
3 Derbyshire Pl
Utica NY 13501

Exhibit A